IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RAKEEM RANKINS, et al.  : CIVIL ACTION
                        :
   v.                   : No. 16-5525
                        :
BRISTOL TOWNSHIP        :

**MEMORANDUM**

**Juan R. Sánchez, J.**                                    May 31, 2017

Ebony Capri Talley and her five-year-old daughter R'Mani Rankins were brutally murdered by Marcel Johnson, an associate of Talley, in November 2013. Rakeem Rankins, R'Mani's father, and Pearline Davis, Talley's mother, individually and as administrators of their daughter's estates, bring this civil rights action, pursuant to 42 U.S.C. § 1983, asserting claims for violations of their daughters' Fourteenth Amendment rights under a state-created danger and municipal liability. The Township moves to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(6). Because Plaintiffs have failed to sufficiently plead any of the necessary elements of a state-created danger claim and have failed to plead the existence of an unconstitutional custom or policy, a prerequisite for the imposition of municipal liability, the Court finds dismissal is warranted. Plaintiffs' Complaint will be dismissed without prejudice.

**BACKGROUND[1]**

In November 2013, Johnson murdered Ebony Capri Talley[2] and her five-year-old daughter, R'Mani Rankins by stabbing them and then setting them on fire inside their apartment. Johnson was subsequently convicted of both murders.

---

[1] The following facts are from Plaintiffs' Complaint, the allegations of which the Court accepts as true for purposes of deciding the instant motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (holding a court considering a Rule 12(b)(6) motion to dismiss should "assume the[] veracity" of the Complaint's "well-pleaded factual allegations").

1

In December 2014, Rakeem Rankins, R'Mani's father, learned that at the time of the murder, Talley and Johnson were under investigation by the Township for drug trafficking. As part of the investigation, the Bristol Borough Police Department had been gathering evidence, including video and audio surveillance recorded by a government informant, of Talley and Johnson engaging in drug transactions. The informant also engaged in drug transactions with Talley. Some of the drug transactions captured and facilitated by the informant occurred while R'Mani was present. Plaintiffs allege that by conducting this investigation of Talley, the Township created a danger, or increased the risk of danger, to both Talley and R'Mani, and ultimately caused their deaths.

**DISCUSSION**

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating a Rule 12(b)(6) motion, a court first must separate the legal and factual elements of the plaintiff's claims, accepting the well-pleaded factual allegations as true and disregarding any legal conclusions. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal,* 556 U.S. at 679). A claim is facially plausible when the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A court may consider matters of public record in deciding a motion to dismiss. *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

---

[2] At the time of her murder, Talley was pregnant.

To state a § 1983 claim, a plaintiff must allege the defendants, "acting under color of state law deprived him . . . of a right secured by the Constitution or the law of the United States." *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006). Here, Plaintiffs allege the Township violated their daughters' Fourteenth Amendment substantive due process rights under the "state-created danger" doctrine.

The state-created danger doctrine is an exception to the general rule that "[a] state's failure to take affirmative action to protect a victim from the actions of a third person will not, in the absence of a custodial relationship between the state and the victim, support a civil rights claim." *Brown v. Grabowski*, 922 F.2d 1097, 1100-01 (3d Cir. 1990) (citing *DeShaney v. Winnebago Cty. Dep't. of Soc. Servs.*, 489 U.S. 189 (1989)). Under the state-created danger doctrine, a due process violation may "occur when state authority is affirmatively employed in a manner that injures a citizen or renders him 'more vulnerable to injury from another source than he or she would have been in the absence of state intervention.'" *Bright v. Westmoreland Cty.*, 443 F.3d 276, 281 (3d Cir. 2006) (quoting *Schieber v. City of Phila.*, 320 F.3d 409, 416 (3d Cir. 2003)). To plead a state-created danger claim, a plaintiff must allege

> (1) the harm ultimately caused to the plaintiff was foreseeable and fairly direct; (2) the state-actor acted in willful disregard for the plaintiff's safety; (3) there was some relationship between the state and the plaintiff; and (4) the state-actor used his authority to create an opportunity for danger that otherwise would not have existed.

*Phillips v. Cty. of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008); *see also Bright*, 443 F.3d at 281.

For purposes of the first element, harm is foreseeable when there is "an awareness on the part of the state actors that rises to the level of actual knowledge or an awareness of risk that is sufficiently concrete to put the actors on notice of the harm." *Phillips*, 515 F.3d at 238; *see K.S.S. v. Montgomery Cty. Bd. of Comm'rs*, 871 F. Supp. 2d 389, 400 (E.D. Pa. 2012) ("[H]arm is

foreseeable when a state actor has actual awareness, based on concrete information, of a risk of harm to an individual . . . such that the actor is on notice that his or her act or failure to act significantly enhances the risk of harm." (citation omitted and omission in original)). Moreover, to determine whether the harm is fairly direct, the court considers whether the harm "occurs to an identifiable or discrete individual under the circumstances" or merely "to a 'random' individual with no connection to the harm-causing party." *Phillips*, 515 F.3d at 239. "This inquiry essentially asks whether the alleged misconduct and the harm caused were 'too attenuated' to justifiably hold the defendant liable." *D.N. ex rel. Nelson v. Snyder*, 608 F. Supp. 2d 615, 625 (M.D. Pa. 2009) (citing *Phillips*, 515 F.3d at 238).

To sufficiently plead the second element of a state-created danger action—state action in willful disregard of the plaintiff's safety—a plaintiff must allege that the state actor acted with a degree of culpability that "shocks the conscience." *Bright*, 443 F.3d at 281. There is "no calibrated yard stick" to measure what actions shock the conscience, and "the exact degree of wrongfulness necessary . . . depends upon the circumstances of a particular case." *Kaucher*, 455 F.3d at 435-36 (3d Cir. 2006). This element may be satisfied by allegations showing the state action acted with "(1) deliberate indifference; (2) gross negligence or arbitrariness that indeed shocks the conscience; or (3) intent to cause harm." *Phillips*, 515 F.3d at 241.

The third element of a state-created danger claim requires a plaintiff to plead a relationship between the state and the plaintiff "such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions." *Bright,* 443 F.3d at 281. Such a relationship exists where there is "some contact such that the plaintiff was a foreseeable victim of the defendant's acts in a tort sense." *Kneipp v. Tedder*, 95 F.3d 1199, 1209 n.22 (3d Cir. 1996).

Finally, a plaintiff must allege "a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all." *Bright,* 443 F.3d at 281. To satisfy this final element, the plaintiff must allege (1) a state actor exercised his or her authority; (2) the state actor took an affirmative action; and (3) this affirmative act created a danger to the citizen or rendered the citizen more vulnerable to danger than if the state had not acted at all. *See Ye v. United States,* 484 F.3d 634, 639 (3d Cir. 2007)). This element requires allegations of "misuse of state authority, rather than a failure to use" state authority. *Bright*, 443 F.3d at 282. "But a specific and deliberate exercise of state authority, while necessary[,] . . . is not sufficient. There must be a direct causal relationship between the affirmative act of the state and the plaintiff's harm." *Kaucher*, 455 F.3d at 432. Thus, to satisfy this element, a plaintiff must allege "the state's action was the '*but for cause*' of the danger faced by the plaintiff." *Id.* (emphasis added).

Here, Plaintiffs allege, in essence, that the Township created a danger to a five-year-old, R'Mani, or increased her vulnerability to danger, by conducting its investigation of Talley—including surveilling Talley and using an informant to engage in drug transactions—in R'Mani's presence and in the presence of Johnson, her murderer. Plaintiffs further allege the Township placed Talley in danger by successfully recommending that she receive a reduced sentence and probation period, which the Township sought to further its investigation of Johnson, and by failing to arrest Talley when the Township had gathered sufficient evidence to do so from its investigation of her. Plaintiffs' allegations fail to state a claim of state-created danger.

Plaintiffs have failed to sufficiently plead the existence of any of the four elements of a state-created danger as to R'Mani. As to the first element, foreseeability and directness of harm to the plaintiff, Plaintiffs allege that the Township placed R'Mani in danger of being murdered

5

by Johnson by investigating her mother, Talley, while R'Mani was present. Plaintiffs, however, plead no actions or occurrences that took place during the course of its investigation, including its surveillance of Talley and the drug transactions it engaged Talley in, which would have provided the Township any notice that R'Mani might ultimately be harmed by Johnson. And the mere fact that R'Mani was present during drug transactions does not support a reasonable inference that it was foreseeable to the Township that Johnson would murder her. Plaintiffs have also failed to allege that the harm to R'Mani was "fairly direct" to the Township's surveillance of Talley. Rather, any link between the Township's investigation of Talley and the tragic death of R'Mani at the hands of Johnson is too attenuated to hold the Township liable.

Plaintiffs also fail to allege any conduct by the Township that shocks the conscience. Plaintiffs do not allege that conducting a drug trafficking investigation or using an informant is inherently conscience-shocking, only that doing so in the presence of a five-year-old is. While the Court is troubled by allegations that the Township used an informant to engage Talley in drug transactions while her five-year-old daughter was present—and finds such conduct could raise an inference of the Township's deliberate indifference toward potential harm to R'Mani—Plaintiffs' general and conclusory allegations, without more, are insufficient to raise an inference of deliberate indifference, gross negligence, arbitrariness, or intent to do harm on the part of the Township.

Plaintiffs fail to allege a relationship between R'Mani and the Township. R'Mani's mere presence while an informant engaged in drug transactions with Talley fails to establish the requisite contact contemplated by the relationship requirement. And Plaintiffs' allegations that the Township conducted its investigation while R'Mani was present do not place her in a discrete class of persons subjected to potential harm brought about by the investigation. Indeed,

allegations that R'Mani was present at drug transactions facilitated by an informant do not support the inference that she was a foreseeable victim of a murder that occurred wholly independent of the Township's investigation. Plaintiffs allegations are thus insufficient to establish a relationship between the Township and R'Mani.

Finally, Plaintiffs fail to sufficiently plead the Township used its authority to create an opportunity for endangering R'Mani that otherwise would not have existed. For one, there is no indication from Plaintiffs' allegations that the Township's investigation or any other action taken by the Township increased the risk Johnson would harm R'Mani. R'Mani's presence during drug transactions and exposure to Johnson occurred independently of the Township's investigation. Plaintiffs do not allege otherwise. More importantly, Plaintiffs do not plead that the affirmative acts of the Township in investigating Talley were the *but for* cause of R'Mani's death. Instead, the danger facing R'Mani resulted from affirmative actions taken by Johnson, her murderer, not the Township.

Plaintiffs have also failed to sufficiently plead any of the four elements of a state-created danger as to Talley. In addition to alleging the Township investigated and surveilled Talley,[3] Plaintiffs allege that the Township placed her in danger by recommending "reduced/lesser sentences" and "reduced probationary periods" so the Township "could obtain additional drug dealing and trafficking information," Compl. ¶¶ 21(C), (E), (H), and by "[f]ail[ing] to arrest, charge, detain and/or prosecute" Talley when it had sufficient evidence to do so, *id.* ¶ 21(F).

These allegations, however, fall short of the pleading requirements for a state-created danger claim. As to the first element, even if the Township secured Talley's release from prison for its own investigative purposes, Plaintiffs fail to allege any facts that suggest her murder was

---

[3] To the extent Plaintiffs allege the Township's investigation of Talley placed her in a state-created danger, the claim fails for the same reasons outlined above.

foreseeable in any way to the Township. Moreover, Plaintiffs have failed to plead that Talley's murder was fairly direct to the Township's actions related to her prior custody and release or the investigation. Similarly, the fourth element fails, as Plaintiffs do not allege the Township's actions were the but for cause of Talley's death. Plaintiffs fail to sufficiently plead the third element as well. Besides Talley having been previously incarcerated by the Township, Plaintiffs do not allege any ongoing relationship or contact between the Township and Talley. And even if Talley's prior custody was sufficient to establish a relationship between her and the Township, Plaintiffs do not allege Talley's murder was brought about as result of the custody or the Township's actions related to it. Finally, the Township's actions in releasing Talley from custody, subsequently investigating her, and failing to arrest her do not shock the conscience.

Because Plaintiffs have failed to sufficiently plead any element of a state-created danger claim as to either R'Mani or Talley, the Court will dismiss their state-created danger claim.

The Township also moves to dismiss the Complaint on the ground that the Plaintiffs have failed to allege a basis for municipal liability. "[W]hen a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation, or decision officially adopted by the governing body or informally adopted by custom." *McTernan v. City of York*, 564 F.3d 636, 657 (3d Cir. 2009). To establish a policy or custom, a plaintiff must allege more than a single incident and cannot rely on vague assertions about a police department's wrongdoing to demonstrate a municipal practice or policy. *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995) (finding municipal liability claim "unsubstantiated" where plaintiff relied only on vague assertions and the specific incident giving rise to the claim); *see also City of Okla. City v. Tuttle*, 471 U.S. 808, 823-24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose

8

liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker. Otherwise the existence of the unconstitutional policy, and its origin, must be separately proved." (plurality opinion)).

Plaintiffs' municipal liability claim fails because they do not allege that the Township carried out a policy or custom that deprived them of a constitutional right. Plaintiffs argue they have sufficiently pleaded a municipal liability claim by "alleg[ing] that the Township and its police officers lacked sufficient policies and procedures relative to protecting minors from the risks associated with drug transactions, which the police facilitated." Pls.' Opp'n 12. Despite their argument to the contrary, the facts Plaintiffs allege to support the existence of this policy center around a single, albeit tragic, incident: the murder of Talley and R'Mani during the time the Township was investigating Talley. Plaintiffs' vague and bare assertions are insufficient to plead an unconstitutional policy. Their municipal liability claim will therefore be dismissed.

In opposing the Township's motion, Plaintiffs seek—in the event the Court finds dismissal warranted—leave to amend their complaint. "[I]n civil rights cases district courts must offer amendment . . . when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007). Plaintiffs' request for leave to file an amended complaint will therefore be granted.

An appropriate Order follows.

BY THE COURT:


/s/ Juan R. Sánchez
Juan R. Sánchez, J.